# EXHIBIT B

## SHARE PURCHASE AGREEMENT

**THIS AGREEMENT** made as of the 18th day of February 2020.

**B E T W E E N:**

### SOL GLOBAL INVESTMENTS CORP

100 King Street W, Suite 5600, Toronto, Ontario M5X 1C9

(the "**Seller**")

- and -

### KADIRALI CHUNARA

2199 Glenmore Lane; Snellville, GA 30078

(the "**Buyer**")

-and-

### HEAVENLY RX LTD.

100 King Street W, Suite 5600, Toronto, Ontario M5X 1C9

(the "**Corporation**")

**CONTEXT:**

A. The Seller is a corporation existing under the laws of Ontario.

B. The Seller is the owner of 1,666,667 common shares in the capital of the Corporation.

C. The Seller wishes to sell to the Buyer and the Buyer wishes to purchase from the Seller 1,666,667 of the shares owned by the Seller (the "**Purchased Shares**").

**THIS AGREEMENT WITNESSETH** that for and in consideration of the mutual covenants and agreements herein contained, it is hereby agreed as follows:

## ARTICLE 1
## INTERPRETATION

1.1 "**Agreement**" means this purchase agreement, including all Schedules and Appendices, as it may be confirmed, amended, modified, supplemented or restated by written agreement between the Parties;

1.2 "**Closing**" means the completion of the transactions contemplated herein;

1.3 "**Closing Date**" means the date hereof, or such other business day mutually agreed upon by the Parties hereto;



1.4 "**Common Shares**" means common shares of Heavenly Rx Ltd.

1.5 "**Corporation**" means Heavenly Rx Ltd., incorporated under the *Business Corporations Act* (British Columbia).

1.6 "**Parties**" means the Seller and the Buyer, collectively, and "**Party**" means either of them;

1.7 "**Purchased Shares**" means the 1,666,667 Common Shares of the Corporation owned by the Seller;

1.8 "**Regulation D**" shall mean Regulation D promulgated under the U.S. Securities Act;

1.9 "**Regulation S**" shall mean Regulation S promulgated under the U.S. Securities Act;

1.10 "**Seller**" is defined in the recital of the Parties above;

1.11 "**United States**" means the United States of America, its territories and possessions, any State of the United States and the District of Columbia;

1.12 "**U.S. Accredited Investor**" means an "accredited investor" as defined in Rule 501(a) of Regulation D;

1.13 "**U.S. Person**" shall have the meaning ascribed to such term in Rule 902(k) of Regulation S and, without limiting that definition, includes (a) a natural person resident in the United States, (b) a partnership or corporation organized or incorporated under the laws of the United States, (c) an estate of which any executor or administrator is a U.S. Person, (d) a trust of which any trustee is a U.S. Person, (e) a non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit of a U.S. Person, (f) a discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated or (if an individual) resident in the United States, and (g) a partnership or corporation if (i) organized or incorporated under the laws of any foreign jurisdiction, and (ii) formed by a U.S. Person principally for the purpose of investing in securities not registered under the U.S. Securities Act, unless it is organized or incorporated, and owned, by U.S. Accredited Investors who are not natural persons, estates or trusts;

1.14 "**U.S. Purchaser**" means a purchaser that is (a) a U.S. Person, (b) a person that received an offer of the Purchased Shares in the United States, (c) a person that was in the United States when executing or delivering this Agreement or when initiating payment for the Purchased Shares, or (d) a person that is acquiring the Purchased Shares for the account or benefit of a U.S. Person or a person in the United States;

1.15 "**U.S. Securities Act**" means the United States Securities Act of 1933, as amended.

ARTICLE 2
**PURCHASE AND SALE**

2.1 **Agreement of Purchase and Sale**

Subject to the terms and conditions of this Agreement, on the Closing Date (as defined in Article 3 below), the Seller will sell, and the Buyer will purchase, the Purchased Shares.

### 2.2 Amount of Purchase Price

The purchase price payable by the Buyer to the Seller for the Purchased Shares is USD $200,000.00 (the "**Purchase Price**") representing a Purchase Price of USD $0.12 per purchased share.

### 2.3 Payment of Purchase Price

The Buyer will satisfy the Purchase Price at the Closing (as defined in Article 3 below), by effecting payment by certified cheque or other immediately available funds to an account designated in writing by the Seller, on the Closing Date in the amount of USD $200,000.00.

## ARTICLE 3
## CLOSING ARRANGEMENTS

### 3.1 Closing Arrangements

The completion of the sale of the Purchased Shares (the "**Closing**") will occur on February 20, 2020 (the "**Closing Date**") at 10:00 a.m. by electronic closing, when the Buyer will pay the Purchase Price by certified cheque or other immediately available funds, as required by Section 2.3. A share certificate representing the Purchased Shares will remain in the Corporation's minute book.

### 3.2 Closing Documentation

On the Closing Date the Seller and the Buyer will provide each other with documentation to evidence that the execution and delivery of this Agreement and the completion of the transactions contemplated by this Agreement have been duly authorized by all necessary corporate action on the part of each of them.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller and the Corporation that:

4.1  the Buyer is an individual domiciled in the state of Georgia;

4.2  the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action on the part of the Buyer;

4.3  this Agreement has been duly executed and delivered by the Buyer and constitutes a valid and binding obligation of the Buyer, enforceable against the Buyer in accordance with its terms, subject to applicable bankruptcy, insolvency and other laws of general application limiting the enforcement of creditors' rights generally and to the fact that equitable remedies, including specific performance, are discretionary and may not be ordered in respect of certain defaults;



4.4 the Buyer is not party to, bound by, or subject to any agreement, indenture, mortgage, Lease instrument, order judgment, decree, or any provision of its articles or by-laws, which would be violated, contravened or infringed by the execution and delivery of this Agreement by the Buyer or the performance of its obligations under this Agreement;

4.5 none of the execution and delivery of this Agreement by the Buyer, the performance of the Buyer's obligations under this Agreement, or the completion by the Buyer of the transactions contemplated by this Agreement, will result in or constitute a breach of any term or provision of, or constitute a default under, the articles or bylaws of the Buyer or any agreement or other commitment to which the Buyer is a party; and

4.6 the representations and warranties contained in this Article 4 will be true on and as of the Closing Date with the same effect as if made on and as of the Closing Date.

**Buyer in the United States**

4.7 The Buyer is aware that the Purchased Shares have not been and will not be registered under the U.S. Securities Act or the securities laws of any state and that the Purchased Shares may not be offered or sold by it, directly or indirectly, in the United States or to, or for the account or benefit of, a U.S. Person, in each case without registration under the U.S. Securities Act or compliance with the requirements of exemptions from such registration.

4.8 The Buyer is a U.S. purchaser and has completed and returned Schedule "A", U.S. Accredited Investor Certificate.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer and the Corporation, and the Seller hereby expressly acknowledges that the Buyer and the Corporation is relying on such representation in connection with the execution of this Agreement, that:

5.1 the Seller is a corporation duly formed and validly existing under the laws of the province of Ontario;

5.2 the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action;

5.3 the Purchased Shares are legally and beneficially owned by the Seller and the Seller acquired the Purchased Shares pursuant to an applicable exemption from the prospectus requirements under National Instrument 45-106 *Prospectus Exempt Distributions* and section 73.3 of the Securities Act *(Ontario)*;

5.4 the Seller is not a party to, bound by, or subject to any agreement, indenture, mortgage, lease, instrument, order, judgment, decree, or any provision of its articles or by-laws, which would be violated, contravened or infringed by the execution and delivery of this Agreement by the Seller or the performance of its obligations under this Agreement;

TOR_LAW\ 10239550\1

5.5 on the Closing Date all agreements or restrictions which limit or restrict the transfer of the Purchased Shares to the Buyer will have been complied with and the Seller will have good and marketable title to the Purchased Shares with the full legal right, power and authority to sell and transfer them to the Buyer free and clear of all liens, charges, encumbrances and adverse claims;

5.6 the Corporation is not a "reporting issuer" (or equivalent thereof) in any jurisdiction and the Common Shares are subject to an indefinite restriction on resale under applicable securities laws;

5.7 this Agreement has been duly executed and delivered by the Seller and constitutes a valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, subject to applicable bankruptcy, insolvency and other laws of general application limiting the enforcement of creditors' rights generally and to the fact that equitable remedies, including specific performance, are discretionary and may not be ordered in respect of certain defaults.

5.8 none of the execution and delivery of this Agreement by the Seller, the performance of the Seller's obligations under this Agreement, or the completion by the Seller of the transactions contemplated by this Agreement, will result in or constitute a breach of any term or provision of, or constitute a default under, the articles or bylaws of the Buyer or any agreement or other commitment to which the Buyer is a party; and

5.9 the representations and warranties contained in this Section 5 will be true on and as of the Closing Date with the same effect as if made on and as of the Closing Date.

## ARTICLE 6
## RESALE RESTRICTIONS

6.1 The Buyer is aware that there are restrictions on the Buyer's ability to resell the Purchased Shares and it is the Buyer's responsibility to consult the Buyer's own advisors to find out what those restrictions are and to comply with them before selling the Purchased Shares. The Buyer understands and acknowledges that all certificates representing the Purchased Shares shall bear a legend in substantially the following form:

> "UNLESS PERMITTED UNDER SECURITIES LEGISLATION, THE HOLDER OF THIS SECURITY MUST NOT TRADE THE SECURITY BEFORE THE DATE THAT IS 4 MONTHS AND A DAY AFTER THE LATER OF (I) [INSERT DISTRIBUTION DATE], AND II) THE DATE THE ISSUER BECAME A REPORTING ISSUER IN ANY PROVINCE OR TERRITORY."

## ARTICLE 7
## SURVIVAL AND NOTICE

7.1 Any notice, direction or other instrument required or permitted to be given to the Parties hereto shall be in writing and may be given by mailing the same postage prepaid and registered or delivering the same addressed to such Party at the address set out on the first page hereof.



7.2  Any notice, direction or other instrument aforesaid shall be deemed to have been delivered on the date on which it was delivered or, if mailed by prepaid registered post, on the third business day following the day on which the same was mailed.

7.3  The parties hereto may change addresses for service from time to time by written notice given in accordance with the foregoing.

7.4  All the representations, warranties and covenants in this Agreement will survive Closing.

7.5  All representations, warranties and covenants in this Agreement may, at the option of the party to which they are given, be treated as conditions, the breach of any of which will entitle that party to terminate this Agreement.

## ARTICLE 8
## GENERAL

**8.1  Time of Essence**

Time shall, in all respects, be of the essence of this Agreement.

**8.2  Governing Law**

This Agreement is governed by, and is to be construed and interpreted in accordance with, the laws of the Province of Ontario and the laws of Canada applicable in that Province.

**8.3  Further Assurances**

Each of the Parties, upon the request of the other Party, whether before or after the Closing Date, will do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered all further acts, deeds, documents, assignments, transfers, conveyances, powers of attorney and assurances as may be reasonably necessary or desirable to complete and give full effect to the transactions contemplated by this Agreement.

**8.4  Assignment and Enurement**

Neither this Agreement nor any right or obligation under this Agreement may be assigned by either Party without the prior consent of the other Party. This agreement enures to the benefit of and is binding upon the Parties and their respective heirs, executors, administrators, estate trustees, trustees, personal or legal representatives successors and permitted assigns.

**8.5  Entire Agreement**

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this agreement and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties and there are no representations, warranties or other agreements between the parties in connection with the subject matter of this agreement except as specifically set out in this Agreement or in any other agreements and documents delivered under this Agreement. No party has been induced to enter into this agreement in reliance on, and there will be no liability assessed, either in tort or contract, with respect to, any warranty, representation, opinion, advice or assertion of fact, except to the extent it has been reduced to writing and included as a term in this Agreement.

### 8.6 Counterparts and Electronic Delivery

This agreement may be executed and delivered by the parties in one or more counterparts, each of which will be an original, and each of which may be delivered by facsimile, e-mail or other functionally equivalent electronic means of transmission, and those counterparts will together constitute one and the same instrument.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**



**IN WITNESS WHEREOF** the parties hereto have executed this Agreement as of the date above written.

Buyer:   **KADIRALI CHUNARA**

Per: _____
Name:
Title:

Seller:   **SOL GLOBAL INVESTMENTS CORP**

Per: _____
Name:
Title:

Corporation:   **HEAVENLY RX LTD.**

Per: _____
Name:  William Wolz
Title:   Chief Financial Officer

## SCHEDULE "A"
## U.S. ACCREDITED INVESTOR CERTIFICATE

*\*TO BE COMPLETED BY U.S. BUYERS\**

TO:  SOL GLOBAL INVESTMENTS CORP. (THE "SELLER")

AND TO:  HEAVENLY RX LTD. (THE "CORPORATION")

Capitalized terms not specifically defined in this U.S. Accredited Investor Certificate (this "**Certificate**") have the meanings ascribed to them in the agreement to which this Certificate is attached (the "**Agreement**"). In the event of a conflict between the terms of this Certificate and the Agreement, the terms of this Certificate shall prevail. The undersigned Buyer represents, warrants, acknowledges and covenants to the Seller and the Corporation as follows:

(a) The Buyer understands that the Purchased Common Shares have not been and will not be registered under the U.S. Securities Act or the securities laws of any state of the United States, and the Purchased Common Shares are therefore "restricted securities" within the meaning of Rule 144 ("**Rule 144**") under the U.S. Securities Act, and that the sale contemplated hereby is being made only to U.S. Accredited Investors in reliance on an exemption from registration under the U.S. Securities Act.

(b) The Buyer has had access to such information concerning the Corporation as it has considered necessary or appropriate in connection with its investment decision to acquire the Purchased Common Shares.

(c) The Buyer is acquiring the Purchased Common Shares for its own account, for investment purposes only, and not with a view to any resale, distribution or other disposition of the Purchased Common Shares in violation of the United States federal securities laws or state securities laws.

(d) The Buyer acknowledges that it has not purchased the Purchased Common Shares as a result of any form of "general solicitation" or "general advertising" (as such terms are used in Regulation D under the U.S. Securities Act), including, without limitation, any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over radio or television or other form of telecommunications, or published or broadcast by means of the Internet or any other form of electronic display, or any seminar or meeting whose attendees have been invited by general solicitation or general advertising.

(e) If the Buyer decides to offer, sell, pledge or otherwise transfer any of the Purchased Common Shares, directly or indirectly, such securities may be offered, sold, pledged or otherwise transferred only:

  (i) to the Corporation;

  (ii) outside the United States in a transaction meeting the requirements of Regulation S ("**Regulation S**") under the U.S. Securities Act and in compliance with applicable local laws and regulations;

TOR_LAW\ 10239550\1

(iii) in accordance with (A) Rule 144A ("**Rule 144A**") under the U.S. Securities Act, if available, or (B) Rule 144, if available, and, in each case, in compliance with any applicable state securities laws of the United States; or

(iv) in another transaction that does not require registration under the U.S. Securities Act or any applicable state laws and regulations governing the offer and sale of securities,

and, in the case of clause (ii) above, providing a declaration to the Corporation and the registrar and transfer agent for the Purchased Common Shares in form attached hereto as Appendix "A" (or such other form as the Corporation may prescribe from time to time) and in the case of clauses (iii)(B) or (iv) above, it has prior to such sale furnished to the Corporation an opinion of counsel, of recognized standing, to the effect that the proposed transfer may be effected without registration under the U.S. Securities Act or applicable state securities laws.

(f) The Buyer understands and acknowledges that until such time as the same is no longer required under the applicable requirements of the U.S. Securities Act or applicable state securities laws and regulations, the certificates representing the Purchased Common Shares and all certificates issued in exchange therefor or in substitution thereof, will bear a legend in substantially the following form:

"THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS.  THE HOLDER HEREOF, BY PURCHASING THESE SECURITIES, AGREES FOR THE BENEFIT OF HEAVENLY RX LTD. AND ITS SUCCESSORS (THE "CORPORATION"), THAT THESE SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A) TO THE CORPORATION, (B) OUTSIDE THE UNITED STATES IN ACCORDANCE WITH RULE 904 OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN COMPLIANCE WITH APPLICABLE CANADIAN LOCAL LAWS AND REGULATIONS, (C) IN COMPLIANCE WITH (1) RULE 144A UNDER THE U.S. SECURITIES ACT, IF APPLICABLE, OR (2) RULE 144 UNDER THE U.S. SECURITIES ACT, IF APPLICABLE, AND, IN EACH CASE, IN COMPLIANCE WITH APPLICABLE STATE SECURITIES LAWS, OR (D) IN ANOTHER TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, PROVIDED THAT IN THE CASE OF TRANSFERS PURSUANT TO (C)(2) OR (D) ABOVE, A LEGAL OPINION SATISFACTORY TO THE CORPORATION MUST FIRST BE PROVIDED. DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE "GOOD DELIVERY" IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA."

provided, that



if any of the Purchased Common Shares are being sold outside the United States in compliance with the requirements of Rule 904 of Regulation S, the legends set forth above may be removed prior to such sale by providing an executed declaration to the registrar and transfer agent of the Corporation, in substantially the form set forth as Appendix "A" attached hereto (or in such other forms as the Corporation may prescribe from time to time in order to comply with applicable securities laws) and, if requested by the Corporation or its transfer agent, an opinion of counsel of recognized standing in form and substance satisfactory to the Corporation and the transfer agent to the effect that such sale is being made in compliance with Rule 904 of Regulation S; and, provided further, if any of the Purchased Common Shares are being sold pursuant to Rule 144, if available, the legend may be removed by delivery to the registrar and transfer agent and the Corporation of an opinion of counsel of recognized standing, reasonably satisfactory to the Corporation, that such legend is no longer required under applicable requirements of the U.S. Securities Act or state securities laws.

(g) The Buyer consents to the Corporation making a notation on its records or giving instructions to the registrar and transfer agent of the Corporation in order to implement the restrictions on transfer set forth and described herein.

(h) The Buyer is aware that its ability to enforce civil liabilities under the United States federal securities laws may be affected adversely by, among other things: (i) the fact that the Corporation is organized under the laws of a jurisdiction outside of the United States; (ii) some or all of the directors and officers may be residents of countries other than the United States; and (iii) all or a substantial portion of the assets of the Corporation and such persons may be located outside the United States. Consequently, it may be difficult to provide service of process on the Corporation and such officers and directors and it may be difficult to enforce any judgment against the Corporation.

(i) The Buyer represents and warrants that the offer, sale and issuance of the Purchased Common Shares is not a transaction, or part of a chain of transactions which, although in technical compliance with an available exemptions under the U.S. Securities Act, is part of a plan or scheme to evade the registration requirements of the U.S. Securities Act.

(j) The Buyer acknowledges that it has been independently advised as to, or acknowledges that it is aware, and understands that the acquisition, holding and disposition of the Purchased Common Shares may have tax consequences under the laws of both the United States and Canada, including, without limitation, with respect to the potential applicability of United States federal tax rules related to "passive foreign investment companies" ("**PFIC**") and "qualified electing fund" ("**QEF**") elections (as such terms are defined in the United States Internal Revenue Code of 1986, as amended), confirms that no representation has been made to it by or on behalf of the Corporation or the Seller with respect thereto, and acknowledges and understands that it is its sole responsibility to determine and assess such tax consequences as may apply to its particular circumstances.

TOR_LAW\ 10239550\1

(k)   The Buyer understands and acknowledges that (i) if the Corporation is ever deemed to be, or to have been at any time previously, an issuer with no or nominal operations and no or nominal assets other than cash and cash equivalents, Rule 144 under the U.S. Securities Act may not be available for re-sales of the Purchased Common Shares and (ii) the Corporation is not obligated to take, and has no present intention of taking, any action to make Rule 144 under the U.S. Securities Act (or any other exemption) available for re-sales of the Purchased Common Shares.

(l)   The Buyer understands and acknowledges that the Corporation is not obligated to file and has no present intention of filing with the United States Securities and Exchange Commission or with any state securities administrator any registration statement in respect of re-sales of the Purchased Common Shares.

(m)   The Buyer understands and acknowledges that the financial statements of the Corporation have been prepared in accordance with Canadian generally accepted accounting principles, which differ in some respects from United States generally accepted accounting principles, and thus may not be comparable to financial statements of United States companies.

(n)   The Buyer is a U.S. Accredited Investor by virtue of satisfying one or more of the categories indicated below (please place your initials on the appropriate line(s)):

_____   Category 1.   A bank, as defined in Section 3(a)(2) of the U.S. Securities Act, whether acting in its individual or fiduciary capacity.

_____   Category 2.   A savings and loan association or other institution as defined in Section 3(a)(5)(A) of the U.S. Securities Act, whether acting in its individual or fiduciary capacity.

_____   Category 3.   A broker or dealer registered pursuant to Section 15 of the *Securities Exchange Act of 1934*.

_____   Category 4.   An insurance company as defined in Section 2(a)(13) of the U.S. Securities Act.

_____   Category 5.   An investment company registered under the *Investment Company Act of 1940*.

_____   Category 6.   A business development company as defined in Section 2(a)(48) of the *Investment Company Act of 1940*.

_____   Category 7.   A small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the *Small Business Investment Act of 1958*.

_____   Category 8.   A plan established and maintained by a state, its political subdivisions, or an agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, with assets in excess of US$5,000,000.

_____   Category 9.   An employee benefit plan within the meaning of the *Employee Retirement Income Security Act of 1974* if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association,



|  |  |  |
|---|---|---|
|  |  | insurance company or registered investment advisor, or if the employee benefit plan has total assets in excess of US$5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors. |
| _____ | Category 10. | A private business development company as defined in Section 202(a)(22) of the *Investment Advisers Act of 1940*. |
| _____ | Category 11. | An organization described in Section 501(c)(3) of the *Internal Revenue Code*, a corporation, a Massachusetts or similar business trust, or a partnership, not formed for the specific purpose of acquiring the Purchased Common Shares, with total assets in excess of US$5,000,000. |
| _____ | Category 12. | A director or executive officer of the Corporation. |
| _____ | Category 13. | A natural person (including an IRA (Individual Retirement Account) owned by such person) whose individual net worth, or joint net worth with that person's spouse, at the time of this purchase exceeds US$1,000,000. |

*Note*: For purposes of calculating "net worth" under this category:

(i) The person's primary residence shall not be included as an asset;

(ii) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

(iii) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability.

|  |  |  |
|---|---|---|
| _____ | Category 14. | A natural person (including an IRA (Individual Retirement Account) owned by such person) who had an individual income in excess of US$200,000 in each of the two most recent years or joint income with that person's spouse in excess of US$300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year. |
| _____ | Category 15. | A trust, with total assets in excess of US$5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in SEC Rule 506(b)(2)(ii). |



TOR_LAW\ 10239550\1

| | | |
|---|---|---|
| _____ | Category 16. | A revocable trust that may be revoked or amended by its settlors (creators), each of whom is an Accredited Investor under Category 13. |
| _____ | Category 17. | An entity in which all of the equity owners are accredited investors because they all meet the requirements of one or more of the above categories. |

**ONLY U.S. PURCHASERS NEED TO COMPLETE AND SIGN THIS CERTIFICATE**

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**



Certified at _2199 Glenmore Lane Snellville GA 30078_ on _9th day of March_, 20_20_.

_Kadiwali Chuncoo_
Print name of Buyer

By: _Chuncoo_
Signature

Print name of Signatory (if different from Buyer)

_Owner_
Title

## APPENDIX "A"
## TO U.S. ACCREDITED INVESTOR CERTIFICATE

### FORM OF DECLARATION FOR REMOVAL OF LEGEND

TO:       HEAVENLY RX LTD. (THE "CORPORATION")

AND TO:   [●], as registrar and transfer agent of the Corporation

_____

The undersigned (A) acknowledges that the sale of _____ common shares of the Corporation represented by certificate number _____, to which this declaration relates, is being made in reliance on Rule 904 of Regulation S ("**Regulation S**") under the United States Securities Act of 1933, as amended (the "**U.S. Securities Act**"), and (B) certifies that (1) it is not an "affiliate" (as defined in Rule 405 under the U.S. Securities Act) of the Corporation or a "distributor" or an affiliate of a distributor, (2) the offer of such securities was not and will not be made to a person in the United States and either (a) at the time the buy order was originated, the purchaser was outside the United States, or the seller and any person acting on its behalf reasonably believe that the purchaser was outside the United States or (b) the transaction was or will be executed on or through the facilities of a "designated offshore securities market" and neither the seller nor any person acting on its behalf knows that the transaction has been pre-arranged with a purchaser in the United States, (3) neither the seller nor any person acting on its behalf has engaged or will engage in any "directed selling efforts" in the United States in connection with the offer and sale of such securities, (4) the sale is bona fide and not for the purpose of "washing off" the resale restrictions imposed because the securities are "restricted securities" (as that term is defined in Rule 144(a)(3) under the U.S. Securities Act), (5) the seller does not have a short position in the securities sold in reliance on Rule 904 and does not intend to replace such securities with fungible unrestricted securities, and (6) the contemplated sale is not a transaction, or part of a series of transactions which, although in technical compliance with Regulation S, is part of a plan or scheme to evade the registration provisions of the U.S. Securities Act. Unless otherwise specified, terms used herein have the meanings given to them by Regulation S.

The undersigned in making this declaration acknowledges that the Corporation and its respective officers, directors and agents are relying on the statements made in this declaration and hereby agrees to indemnify and hold harmless the Corporation and its respective officers, directors and agents for any and all liability, losses, claims and demands in any way related to the subject matter of this declaration.

Dated:

_____      _____
                                                           Name of Seller

By: _____
            Name:
            Title: